IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERT ANTHONY SALAZAR, | ) | Case No. 16-40346 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 16-4085 |
| | ) | |
| ROBERT ANTHONY SALAZAR, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The United States Trustee filed this adversary proceeding seeking a denial of Debtor Robert Anthony Salazar's discharge pursuant to 11 U.S.C. § 727(a)(3), (4) and (5). For the reasons stated at the conclusion of the trial held on November 8, 2016, as supplemented by those that follow, judgment will be entered in favor of the United States Trustee, and the Debtor's discharge will be denied.

As relevant here, § 727(a) of the Bankruptcy Code provides:

(a) The court shall grant the debtor a discharge, unless—

\* \* \*

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be

ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case –

    (A) made a false oath or account;

    (B) presented or used a false claim;

    (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;  [or]

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. . . .[1]

Denying a debtor a discharge is a harsh penalty.[2] Consequently, § 727 is strictly construed in favor of the debtor.[3] Nevertheless, a discharge in bankruptcy and the associated fresh start are privileges, not fundamental rights.[4] The burden of proof is on the objecting party to prove each element of a § 727 action by a preponderance of the evidence.[5]

---

[1] 11 U.S.C. § 727(a).

[2] *Allred v. Vilhauer* (*In re Vilhauer*), 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011).

[3] *Id.*

[4] *Bauer v. Iannacone* (*In re Bauer*), 298 B.R. 353, 357 (B.A.P. 8th Cir. 2003).

[5] *Floret v. Sendecky* (*In re Sendecky*), 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002).

## Factual Background

It is undisputed that, on February 12, 2016 – four days before the Debtor filed his Chapter 7 bankruptcy petition – the Debtor withdrew $9,500 in cash from the bank account which he and his non-debtor spouse owned. It is also undisputed that the Debtor stated on his bankruptcy schedules that he had zero cash and no money in a bank account on the date of filing. When questioned about this by the Chapter 7 Trustee at his § 341 meeting of creditors, the Debtor testified that he had spent all of that money on living expenses prepetition and that he could, and would, produce receipts showing how the money was spent. However, he was able to produce only one receipt for the relevant four-day time period, namely, the receipt for $1,950 which he paid to his bankruptcy attorney on February 12, 2016. $7,550 remained unaccounted for.

In addition, the Debtor's bank account statements for the 60 days prepetition, which he produced to the Chapter 7 Trustee prior to the § 341 meeting, showed that the Debtor had made numerous relatively large cash withdrawals from ATMs at local casinos during that timeframe. Yet, the Debtor stated on his Statement of Financial Affairs that he had no gambling losses.

Following the § 341 meeting, the Debtor and the Chapter 7 Trustee reached a compromise whereby the Debtor agreed to pay into the estate $5,175[6] over nine months, beginning July 1, 2016. That agreement was approved by this Court. Before the first payment came due, however, the Debtor filed a motion to convert his case to Chapter 13, hoping to pay the agreed amount over a longer period of time. The United States Trustee opposed the conversion. This Court denied the Debtor's motion to convert the case.

---

[6] According to the Chapter 7 Trustee at trial, this amount reflected the $7,550 less available exemptions.

In addition, the UST filed this adversary proceeding seeking denial of the Debtor's discharge. Upon the advice of counsel, the Debtor has not made any of the payments to the Trustee, pending the outcome of this adversary proceeding. The Debtor testified that he has been saving the payments that have come due and that he has those funds available to turn over to the Trustee.

## **Denial of Discharge Under § 727(a)(3)**

To prevail under § 727(a)(3), a party seeking the denial of the debtor's discharge must establish that a debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which the debtor's financial condition might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. "Once that party has shown that the debtor's records are inadequate, the burden of production shifts to the debtor to offer a justification for his record keeping (or lack thereof); however, the objecting party bears the ultimate burden of proof with respect to all elements of this claim."[7]

> Although the Bankruptcy Code does not require an impeccable system of bookkeeping, the records must sufficiently identify the transactions so that intelligent inquiry can be made of them. Even if poorly organized, there must be a reasonably sufficient basis upon which to ascertain the debtor's financial condition. Various factors may be utilized to determine whether the records are inadequate for purposes of applying § 727(a)(3) and include: the debtor's education, the debtor's business experience, the sophistication of the debtor, the volume of the debtor's business, the complexity of the debtor's

---

[7] *Wilson v. Walker* (*In re Walker*), 515 B.R. 725, 751 (Bankr. W.D. Mo. 2014) (citations omitted).

4

business, the debtor's personal financial structure, and any other circumstances that should be considered in the interest of justice.[8]

### Denial of Discharge Under § 727(a)(4)(A)

To establish that the Debtor made a false oath under § 727(a)(4)(A), the UST is required to prove, by a preponderance of the evidence, that: (1) the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case.[9] "Statements made with reckless indifference to the truth are regarded as intentionally false, and fraudulent intent may be established by circumstantial evidence."[10]

> As § 727(a)(4) makes clear, the [Bankruptcy] Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind. The debtor's petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts.[11]

The materiality threshold is fairly low: "The subject matter of a false oath is 'material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[12]  "The debtor's petition, including schedules and statements, must be accurate and

---

[8] *Id.* (*quoting United States Trustee v. Kouangvan* (*In re Kouangvan*), 2012 WL 2931182 at *3 (Bankr.S.D.Iowa July 18, 2012) (slip copy) (citations, internal quotation marks, and brackets omitted)).

[9] *Home Service Oil C. v. Cecil* (*In re Cecil*), 542 B.R. 447, 451 (B.A.P. 8th Cir. 2015) (citations omitted).

[10] *Id.*

[11] *Id.* (quoting *In re Korte*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001)).

[12] *In re Korte*, 262 B.R. at 474.

reliable, without the necessity of digging out and conducting independent examinations to get to the facts. Statements made in schedules are signed under penalties of perjury and have the force and effect of oaths, and testimony elicited at the first meeting of creditors is given under oath."[13]

## Denial of Discharge Under § 727(a)(5):

A debtor's discharge can also be denied if fails to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. "[O]nce a party objecting to discharge under § 727(a)(5) has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened to the assets."[14]

## Discussion

At trial, with regard to the unaccounted-for $7,500 cash, the Debtor testified again that he had spent all of that money on living expenses for his five children, one of which is in college, and two of which have disabilities. He also said he bought a pair of glasses for one of his children. However, he was still unable to produce even a single receipt for such living expenses. This was despite the fact that he did produce receipts for medication, vet bills, and other items for the irrelevant time periods immediately before and after the relevant four-day period. He testified that he did not realize he would need to produce receipts, even though he had previously been a debtor in a bankruptcy case and it should have been obvious to him that the Chapter 7 Trustee would inquire about large cash

---

[13] *Id.* (citations and internal quote marks omitted).

[14] *In re Gregg*, 510 B.R. 614, 625 (Bankr. W.D. Mo. 2014) (citing *Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 619-20 (11th Cir. 1984)).

withdrawals on the eve of bankruptcy.  The Court finds the Debtor's testimony that he spent the money on living expenses to be lacking in credibility.

This conclusion is bolstered by the fact that bank statements for the period between October 15, 2015 and the filing date, which were admitted into evidence at trial, showed that the Debtor had been at local casinos on numerous occasions during that timeframe, and that he made large cash withdrawals from ATMs when he was there, sometimes taking multiple withdrawals in a single day.  Indeed, the statements show that, in some instances, he was at the casinos several times a week, making ATM withdrawals.  For example, between January 22 and the February 16 petition date, the Debtor made at least twelve cash withdrawals at local casinos, totaling over $4,000.  Also notably, the bank statements show that the ATM withdrawals essentially stopped for about a month after the Debtor filed his bankruptcy case.

At trial, the Debtor testified, as he had at a Rule 2004 exam, that he and his wife went to the casinos for dinner and shows, not to gamble.  He testified that it might have been his wife who made some of the withdrawals, even though they were all made using his debit card and she had her own debit card to the same account.  He further testified that they essentially did not gamble at the casinos, except $20 apiece sometimes, which is why he did not report on his SOFA that he had gambling losses.  He testified that they usually walked out of the casinos with much of cash they had withdrawn from the ATMs.

The Court finds this testimony simply lacks credibility.

As the UST asserts, the standard for record-keeping is fairly minimal under § 727(a)(3).  However, the Debtor is intelligent and has successfully filed a bankruptcy case in the past:  He clearly should have known that the Chapter 7 Trustee would inquire about how the $9,500 cash was spent on the eve of

bankruptcy filing, particularly when the bank accounts would reveal significant gambling activity. The Debtor's failure to produce a single receipt other than the payment to his attorney, and his vague testimony about how the money was spent was simply insufficient. The UST therefore proved that the Debtor failed to keep or preserve recorded information from which his financial condition might be ascertained, and that such failure was not justified under the circumstances of the case. As a result, the Debtor's discharge should be denied under § 727(a)(3).

In addition, the Court finds that, despite his testimony to the contrary, the Debtor had gambling losses and failed to disclose them on his SOFA. The Court also finds that the Debtor had at least some of the cash in his possession when he filed the bankruptcy case, which he did not disclose on his schedules. The schedules and SOFA were statements made under oath, the Debtor knew the statements were false, the Debtor made the false statements with the intent of preventing the Chapter 7 Trustee from recovering the funds, and the statements were material to the Debtor's bankruptcy case. The UST therefore proved that Debtor's discharge should be denied under § 727(a)(4)(A).

Finally, because the Debtor has failed to satisfactorily explain what happened to the $7,500 cash, his discharge should be denied under § 727(a)(5).

### The Agreement with the Chapter 7 Trustee

As stated above, prior to this adversary proceeding being filed, the Debtor reached a compromise with the Chapter 7 Trustee to pay in $5,175, representing the non-exempt portion of the unaccounted-for cash. The Debtor testified that his attorneys advised him not to make the payments under the agreement until this adversary proceeding was resolved, but that he had been saving the payments which had come due under the agreement. The outcome of this adversary proceeding has no bearing on the Debtor's obligation to pay those funds in. In the

event that the Debtor does not pay those funds in in accordance with the agreement, the Chapter 7 Trustee may proceed with collection efforts.

      An Order in accordance with this Memorandum Opinion will be entered this same date.

11/10/2016

                                        /s/ Arthur B. Federman
                                             Bankruptcy Judge

Court to serve parties not receiving electronic notice